UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-81280-CIV-MARRA

FLORIDA IMMIGRANT COALITION; EL SOL,
JUPITER'S NEIGHBORHOOD CENTER; AND
CORN MAYA, INC.,

Plaintiffs,

vs.

MARCOTULIO MENDEZ,
Plaintiff-Petitioner,

vs.

PALM BEACH COUNTY SHERIFF RIC
L. BRADSHAW,

Defendant.
_______________________________________/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Ric L. Bradshaw's Motion to Dismiss (DE 6) and Supporting Defendant The Florida Sheriffs' Association's[1] Motion to Dismiss (DE 29). The Court held a hearing on the motion on April 29, 2010. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I. Background

Plaintiffs bring this action under 42 U.S.C. § 1983 for alleged violations of the fourth and fourteenth amendments against Palm Beach County Sheriff Ric L. Bradshaw ("Sheriff"). Plaintiffs challenge the following policies and practices:

---

[1] On November 23, 2009, the Court granted The Florida Sheriffs' Association's motion for leave to file as amicus curiae.

1) The Sheriff's wrongful confinement of pre-trial detainees for lengthy periods of time without allowing them to post bond already determined by a state court judge, purportedly in reliance on federal immigration "detainers" issued by Immigration and Customs Enforcement ("ICE").

2) The Sheriff's wrongful confinement of pre-trial detainees for far longer than the ICE detainer's explicit 48-hour time limit ("48-hour period") for such detentions.

(Compl. ¶ 1.) Plaintiffs seek declaratory and injunctive relief as well as damages.

The Complaint makes the following allegations: On May 14, 2009, while driving home, Plaintiff Marcotulio Mendez ("Mendez"), a 28-year old Latino male who resides in Palm Beach County, was followed home, which was only a few blocks away, by a Sheriff's Office police officer. There was another car between Mr. Mendez and the officer's car. After Mr. Mendez arrived home and entered his yard, the officer turned on his police car lights and pointed his gun at him. Mr. Mendez put his hands up and assured the officer he was not doing anything unlawful. In front of witnesses, the officer then pointed a taser gun at him while grabbing his wrist. The officer grabbed him by the collar and shoved him to the ground where he handcuffed him. The officer then dragged Mr. Mendez from his yard to the street face down. (Compl. ¶ ¶ 13, 30.)

Mr. Mendez was then taken to the Palm Beach County Jail. He was originally charged with a non-moving violation, driving without a license and resisting arrest with violence. On May 14, 2009, a state court judge set bond at $3,000. On June 15, 2009, the charges were changed to fleeing and eluding, resisting arrest without violence and driving without a license. (Compl. ¶ 31.) On that same day, Mr. Mendez' pastor, Nicolas Lopez, and his friend Ely Mendez, arrived at the Palm Beach jail on Gun Club Road with $3,000 to post bond for Mr. Mendez. (Compl. ¶ 32; Lopez' Aff. ¶ 7, Ex. B, attached to Compl.) However, an individual in

the Sheriff's Office informed them that the bond would not be accepted because an ICE detainer had been issued. (Compl. ¶ 32; Mendez Aff. ¶ 3, Ex. C, attached to Compl.) As soon as the bond was offered and posted, Mr. Mendez would not have been "otherwise detained by a criminal justice agency" and the 48-hour detainer period should have started to run. If ICE did not assume custody of Mr. Mendez within that time, he should have been released from custody. The Sheriff's refusal to allow Mendez to post bond unlawfully detained Mr. Mendez for over three and a half months, far longer than the 48-hour detainer period. (Compl. ¶ 32.)

On July 25, 2009, Pastor Lopez again attempted to post bond for Mr. Mendez. However, he was strongly discouraged from posting such bond by a Palm Beach County Sheriff's Officer. He was told that if he posted bond for Mr. Mendez, he would not only risk not getting his bond money back, but Mr. Mendez would not be released from jail as he would have an immigration hold. (Compl. ¶ 33.) As a result, Mr. Mendez was confined in the Palm Beach County Jail from May 14, 2009 to October 21, 2009. (Compl. ¶ 3; Notice of Withdrawal of Petition of Writ of Habeas Corpus.)[2]

In challenging the Sheriff's policies and practices, the Complaint alleges that the Sheriff confines Latinos and other individuals, often for lengthy periods of time, without permitting them to post bond as authorized by a state court. (Compl. ¶ 22.) Once individuals are arrested by the Sheriff on state criminal charges, they are taken to a Palm Beach County facility where they may be interviewed by ICE agents, if it is believed that they are not United States citizens. The ICE

---

[2] Originally, the Complaint also sought habeas corpus relief. However, on November 9, 2009, Plaintiffs filed a Notice of Withdrawal of Plaintiff Mendez' Petition for Writ of Habeas Corpus. (DE 21.) The Notice informed the Court that Mr. Mendez was transferred to ICE's custody on October 21, 2009 and subsequently released on an immigration bond set by an immigration judge on November 5, 2009.

agent may place a "detainer" hold on a non-citizen, and advise the Sheriff that an investigation is underway into that individual's status. Within a reasonable amount of time, the individual is presented to a state court judge who determines the amount of bail for their release pending disposition of the state criminal charges. (Compl. ¶ 23.) When the individual attempts to post bond, the Sheriff has a policy and practice to either refuse to accept the bond or discourage the individual from trying to post the bond. (Compl. ¶ 24; Daniel Cohen Aff. ¶ 2-5, Ex. A, attached to Compl.) The Sheriff regularly detains bond-eligible arrestees long beyond the 48-hour period. (Compl. ¶ 25.)

Upon information and belief, Latinos and others have been held for as long as several months under this process without being given an opportunity to post bond or otherwise challenge the lawfulness of their continued detention on an ICE detainer in state court. (Compl. ¶ 27.) As of May 15, 2009, the Palm Beach County jail reported that it no longer houses ICE detainees pursuant to a contract, thus any bond-eligible individuals held by the Sheriff for more than 48 hours based solely on immigration detainers are not in ICE custody and have not been transferred to ICE. (Compl. ¶ 28.) The Sheriff has refused to disclose the name of individuals held on immigration detainers. (Compl. ¶ 29.)

Plaintiff Florida Immigrant Coalition ("FLIC") is a community-based, non-profit, membership organization comprised of Florida residents and organizations whose mission is to educate and mobilize the immigrant community around legal and social issues related to the rights of immigrants in Florida. It has had, and continues to have, to divert considerable resources, services and time to assist people in detention because of the Sheriff's unlawful practices. Through this action, it seeks to prevent the unlawful detention of its members and

immigrant community, an objective that is at the core of its mission. (Compl. ¶ 7.) FLIC has members who have ability to post bond in Palm Beach County, but who have been detained or fear being detained for non-serious offenses, including traffic infractions, and whose ability to post bond has been or will be obstructed, denied or refused by the Sheriff. The Sheriff's unlawful practices have frustrated its mission by diverting FLIC's scarce resources to combat the Sheriff's unlawful practices at the expense of its regularly-conducted programs/activities. FLIC has been required to expend resources to locate members who have been unlawfully detained, as their whereabouts have been concealed per the Sheriff's policies. FLIC had also been required to expend resources and to counsel its members and confer with other community leaders to combat the Sheriff's unlawful policies. (Compl. ¶ 8.)

Plaintiff El Sol is a non-profit organization and a neighborhood resource center in Jupiter, Florida. It provides services to all residents of the Town of Jupiter, with a special focus on immigrant residents. Its mission is to educate day-laborers and contractors about their rights and responsibilities and to assist Jupiter's immigrant population to become an active and integrated part of the larger community. It has had, and continues to have, to divert considerable resources, services and time to assist people in detention because of Sheriff's unlawful practices.

Approximately one year ago, a client of El Sol was arrested and put in jail under the care, custody and control of the Sheriff, at the Gun Club facility. The Sheriff refused to release him on bond because there was an "ICE hold" on him. The client was held for a prolonged period of time without the opportunity to post bond because of the Sheriff's prohibition against allowing individuals to post bond with ICE holds. (Compl. ¶ 9.)

El Sol's mission has been frustrated by the Sheriff's unlawful practices. It has been

required in the past, and due to the Sheriff's unlawful conduct, it expects it will be required in the future, to divert considerable resources to assisting more people in detention because of the Sheriff's unlawful practices. It has expended extra time assisting its constituents to try to post bond as Sheriff denied such bond-posting. It has also spent additional time trying to locate its constituents that have been unlawfully detained as their location has been withheld. Additionally, El Sol has spent extra time assisting families of those who have been unlawfully detained. (Compl. ¶ 10.)

Plaintiff Corn Maya is a non-profit membership organization located in Palm Beach County that is dedicated to serving Latino immigrants, mostly Mayans arriving from Guatemala. Among other things, it provides assistance to Latino refugees through education, counseling, representation, and advocacy for the reform of immigration laws and procedures which enable refugees to obtain legal status. Its membership is largely Latino, and includes persons who have been, or are susceptible to being, detained by the Sheriff's refusal to allow individuals to post bond even though a state court judge set such bond. It has had, and continues to have, to divert considerable resources, services and time to assist people in detention because of the Sheriff's unlawful practices. (Compl. ¶ 11.)

Corn Maya's members have been unlawfully denied bond, or fear being unlawfully denied bond, by the Sheriff for more than 48 hours. The Sheriff's unlawful practices have frustrated its mission. Corn Maya has had to expend additional resources to combat the Sheriff's unlawful practices and to help their members cope with such unlawful treatment. Because of the Sheriff's unlawful practices, it has had to counsel its members and/or their family members on how to deal with their unlawful detention, it has had to obtain affidavits of its members on what

the Sheriff has done, and it has expended time trying to locate its detained members without avail. (Compl. ¶ 12.)

At the April 29, 2010 hearing, the Sheriff agreed that because Plaintiffs are not challenging, in this proceeding, the legal validity of the relevant immigration laws and regulations, his motion to dismiss should be denied. The Court will, however, address the issues related to standing. In doing so, the Court notes that the Supporting Defendant the Florida Sheriff Association ("Association") has made several arguments pertaining to standing.

II. Discussion

It is well-established that courts have an independent obligation to ensure that standing exists. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). Article III grants federal courts judicial power to decide only cases and controversies. Allen v. Wright, 468 U.S. 737 (1984). The constitutionally minimum requirements for standing are (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions and (3) the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

A. Organizational Standing

An organization has standing to sue on its own behalf if it has been injured as an entity. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). Just like an individual, an organization must demonstrate a concrete and particularized injury giving it a "personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204 (1962); see also Havens, 455

U.S. at 378-79; Warth v. Seldin, 422 U.S. 490, 508 (1975). An organization has standing to sue on its own behalf if the "defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." Florida State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1165 (11th Cir. 2008) citing Havens, 455 U.S. at 379.

The Complaint states that FLIC has diverted, and continues to divert, considerable resources, services and time to assist people in detention because of the Sheriff's alleged unlawful activity. (Compl. ¶ 7.) As a result, FLIC's mission of seeking equal rights and integration of immigrations into the civil and cultural life of communities has been frustrated. (Compl. ¶ ¶ 7-8.) Likewise, El Sol, an organization that provides English language classes, literacy classes, legal assistance and other services to mostly Latino day labor workers, has had to, and continues to, divert considerable resources, services and time to assist people in detention because of the Sheriff's practice. Indeed, El Sol points out it has expended extra time assisting constituents who try to post bond and trying to locate constituents who have been detained and whose location has been withheld. (Compl. ¶ ¶ 9-10.) Lastly, Corn Maya provides assistance to Latino refugees through education, counseling, representation and advocacy. It has had to, and continues to, divert considerable resources because of the Sheriff's practice and to help its members cope with such treatment. (Compl. ¶ ¶ 11-12.)

The Court finds that these allegations satisfy the Article III standing requirement. Simply put, the Complaint alleges that these three organizations are diverting resources from its regular activities in order to assist people in detention because of the Sheriff's alleged practice. In Browning, the Court ruled that the NAACP and another organization had standing for an

injunction to challenge a voting requirement in Florida because those organizations "reasonably anticipate[d] that they [would] have to divert personnel and time to educating volunteers and voters on compliance" with the new voting requirements. Browning, 522 F.3d at 1165-66. This effect was found to be a "concrete injury." Id. The Browning Court held that a diversion of resources is an injury in fact, noting that an organization's need to counteract the defendant's illegal practice is another manifestation of injury to an organization's non-economic goals. Id. at 1166. Furthermore, the Browning Court stated that the ability of an organization to conduct its projects is sufficiently immediate to satisfy organizational standing. Id. The Court sees no discernable difference between Browning and the case at bar. Thus, the Court finds that organizational standing has been established.[3]

B. Standing of Mr. Mendez

The Court will now address the standing of Mr. Mendez to seek injunctive relief. The Association does not challenge Mr. Mendez's standing with respect to his relief for damages or declaratory relief. Nor does the Court see any grounds to question Mr. Mendez's standing on any

[3] The Court notes that the Association claims that these three organizations cannot meet the test for organizational standing because their claims rest on a theory that the Sheriff will arrest their members for criminal violations in the future. (DE 29 at 13.) This argument is not applicable to organization standing, but associational standing. See United Food and Commercial Workers Union v. Brown Group, Inc., 517 U.S. 544, 552 (1996) (associational standing allows for an organization to bring a suit on behalf of its members without a showing of injury to the organization itself.); Doe v. Stincer, 175 F.3d 879, 882 (11th Cir. 1999) (same). In Common Cause/Georgia v. Billups, the Eleventh Circuit stated that once an organization has standing on its own behalf, the Court need not address whether Plaintiffs also have associational standing. Billups, 554 F.3d 1340, 1351 (11th Cir. 2009). Therefore, the Court will not consider associational standing separately.

other basis other than injunctive relief.[4]

In discussing standing to seeking injunctive relief, the United States Court of Appeals for the Eleventh Circuit has explained the doctrine in the following way:

> Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury. Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past. Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.

Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (internal citations and quotation marks omitted).

The seminal United States Supreme Court addressing standing in the context of injunctive relief is City of Los Angeles v. Lyons, 461 U.S. 95 (1983). There, the plaintiff sought a permanent injunction against the City of Los Angeles, enjoining it from using chokeholds during an arrest unless the victim was threatening the immediate use of deadly force. Id. at 98. The police officers in that case had applied a chokehold, despite the fact that the victim did not offer any resistance or provocation. Id. at 99. The Court held that the plaintiff failed to establish a case or controversy justifying the injunction sought because his standing depended on whether he was likely to suffer future injury from a police officer's chokehold. Id. at 105. The plaintiff lacked standing because he was unable to show an imminent threat of future police brutality. Id. In other words, the Lyons Court held that the probability of future injury was too speculative because the plaintiff would have had to allege that all police officers in Los Angeles always

---

[4] A plaintiff must demonstrate standing separately for each form of relief sought. City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (notwithstanding the fact that the plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief).

choke any citizen with whom they happen to have an encounter or that the City ordered or authorized police officers to act in such a manner. Id. at 105-06.

The Eleventh Circuit distinguished Lyons in Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994). In Church, the plaintiffs were homeless individuals who sought an injunction against the defendant City to prevent the city and its employees from harassing, intimidating, detaining and arresting them solely because they were homeless as part of an effort to drive them out of the city. Id. at 1335. The court held that because the plaintiffs were homeless involuntarily and could not avoid future exposure to the challenged course of conduct by the City, they were more likely to have future encounters with the police than the plaintiff in Lyons. Id. at 1338; see also 31 Foster Children v. Bush, 329 F.3d 1255 (11th Cir. 2003) (foster children in physical custody of state of Florida had standing to pursue injunctive relief based on their involuntary custody and exposure to the defendant's challenged conduct and the allegations of systematic deficiencies in the foster care program).

With respect to Mr. Mendez, the Court concludes that this case is more analogous to Lyons than Church. Like the Lyons plaintiff, Mr. Mendez is unlikely to suffer future injury from the Sheriff's alleged policy of refusing to allow individuals to post bond. For the threatened injury to occur again, Mr. Mendez would have to be arrested once again, and the Sheriff would have to deny him the ability to post bond. This type of injury has been characterized as sufficiently "open-ended" to "cast the injury into the realm of conjecture and speculation." Browning, 522 F.3d at 1162 citing Lyons, 461 U.S. at 108. Although Plaintiffs allege that the Sheriff has a policy of always refusing to allow individuals to post bond, Plaintiffs' response memorandum states that Mr. Mendez was unlawfully arrested twice by the same officer for

driving without a license. Mendez does not claim, however, that the Sheriff denied him the ability to post bond each time he was arrested. (DE 31 at 20). The absence of an allegation that Mr. Mendez was denied bond on both occasions of his arrests supports the conclusion that the alleged policy is not likely to be applied.

The reasoning of Lyons applies here for two other reasons as well. First, the Lyons Court was hesitant to assume that the plaintiff would routinely violate the law in the future resulting in an additional arrest. Second, the Lyons Court recognized that there was an adequate remedy at law for the threatened injury (i.e., a damages suit) should the police unconstitutionally choke the plaintiff in the future. Browning, 522 F.3d at 1162 citing Lyons, 461 U.S. at 103, 111. Likewise, this Court is hesitant to assume to Mr. Mendez will be arrested in the future, and he is seeking damages in this case.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant Ric L. Bradshaw's Motion to Dismiss (DE 6) is **DENIED.**

2) Supporting Defendant The Florida Sheriffs' Association's Motion to Dismiss (DE 29) is **DENIED IN PART AND GRANTED IN PART**. Mr. Mendez has established standing for declaratory relief and damages, but not injunctive relief.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of May, 2010.

KENNETH A. MARRA
United States District Judge